**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **LESLIE A. KESTERSON, individually, and on behalf of all others similarly situated,** | § | |
| **Plaintiff,** | § | **Civil Action No.: 5:25-cv-01095-FB** |
| **v.** | § | |
| **BETTER RISE CAPITAL LLC,** | § | |
| **Defendant** | § | |

**DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

COMES NOW Defendant Better Rise Capital, LLC ("Defendant" or "Better Rise") and files this, its Reply to Plaintiff Leslie A. Kesterson's ("Plaintiff") Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings, and in support thereof shows the Court the following:

## I. SUMMARY OF REPLY

Defendant's Motion evidence establishes that Plaintiff not only invited the very calls for which she now sues but also expressly agreed to arbitrate this dispute, including any issues of arbitrability, by affirmatively checking the online clickwrap agreement with Defendant. [*See* Dkt. 16]. In her response, Plaintiff does not argue that the clickwrap agreement itself is not an enforceable arbitration agreement under Texas law. Instead, Plaintiff claims a fact question on the issue of the formation of an agreement based solely on her self-serving declaration that she "never acknowledged, agreed, or consented to the Privacy Policy and Terms of Use on Lendvia.com" and

"never authorized anyone to do so on [her] behalf." [Dkt. 21-1, ¶ 7].

But where, as here, an electronic process ties assent to an arbitration agreement to a secure protocol, including the requirement of personally identifying information, a secure process for tracking user activities, and a date/time stamp showing the user's completion of certain actions, Texas law is clear that Plaintiff's self-serving denial will not suffice to defeat formation of an agreement. Rather, Plaintiff bears the burden of demonstrating how confidential personal information could have been provided in connection with an electronic signature if she did not input it herself. In this case, Plaintiff does not dispute the accuracy of the personal information provided regarding her home address, social security number, phone number, and email address (other than claiming the email address is "defunct" because she could not recall the password to it). [Dkt. 21-1, ¶ 17]. Instead, she baselessly posits that some "unknown and unauthorized third party" completed the clickwrap agreement using Plaintiff's email, telephone number, social security number, and other personal information. Of course, Plaintiff offers no objective evidence to support that proposition, as the notion that some ostensible scammer would use *Plaintiff's contact information* to solicit a loan that, if granted, would be issued to *Plaintiff herself* is absurd on its face.

As Plaintiff fails to controvert Defendant's evidence of a binding arbitration agreement or to corroborate her self-serving statements, there is no genuine issue of material fact precluding enforcement of the Parties' arbitration agreement. Accordingly, the Court should grant Defendant's Motion, stay this proceeding, and compel the Parties to binding arbitration.

## II. ARGUMENTS AND AUTHORITIES

To determine whether there is a valid agreement to arbitrate, courts "'apply ordinary state law principles that govern the formation of contracts.'" *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995)).

### A. Texas law provides the standard for attributing electronic signatures to the party to be bound.

In the context of electronic signatures, Texas has adopted the Uniform Electronic Transactions Act (the "Act"). *See* TEX. BUS. & COMM. CODE, Ch. 322. The Act defines an "Electronic signature" to mean any electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." *Id.* at § 322.002(8). In the clickwrap agreement in this case, the user clicks "Submit" and/or checks a box to affirmatively "express my understanding and consent electronically via E-sign" to the "Terms of Use which includes binding arbitration," which is further authenticated by the input of sensitive personal information. [Dkt. 16, pp. 7-8; Dkt. 16-2, ¶¶ 12-13]. This process plainly constitutes an electronic signature under the Act. TEX. BUS. & COMM. CODE § 322.002(8).

The Act further provides a standard for attributing a signature to the party to be bound. Section 322.009(a) of the Act provides that an "electronic signature is attributable to a person if it was the act of the person." That "may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." TEX. BUS. & COMM. CODE § 322.002(13). Interpreting these provisions, the Texas Supreme Court has held that an illustrative, though not exclusive, list of effective security procedures "may include requiring personal identifying information—such as a social security number or an address—to register for an account; assigning a unique identifier to a user and then tying that identifier to the user's actions; maintaining a single, secure system for

tracking user activities that prevents unauthorized access to electronic records; business rules that require users to complete all steps in a program before moving on or completing it; and timestamps showing when users completed certain actions." *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 205 (Tex. 2021).

If implemented, these security procedures provide the link between the electronic record stored on a computer or in a database and the person to whom the record is attributed. *Id.* at 206. As the Texas Supreme Court has held, a record that cannot be created or changed without unique, secret credentials can be attributed to the one person who holds those credentials. *Id.* Thus, under Section 322.009's framework for electronic-signature attribution, once a defendant proves their security procedures, the burden shifts to the plaintiff to demonstrate how his personal confidential information could have wound up on the clickwrap agreement without his having input it himself. *Aerotek, Inc.*, 624 S.W.3d at 208-209; TEX. BUS. & COMM. CODE § 322.009. On that score, the Texas Supreme Court was clear: merely denying an electronic signature is not sufficient to show an electronically signed arbitration agreement's invalidity. *Id.*

**B. Defendant's Motion established the requisite use of security protocols to attribute electronic consent to the Clickwrap agreement to Plaintiff.**

In its Motion, Defendant carried its burden of establishing the requisite procedures in place to verify Plaintiff's consent to the clickwrap agreement under the Texas Supreme Court's framework in *Aerotek, Inc.*

First, to register for financial services from Defendant, Plaintiff was required to input unique, personally identifying information otherwise unknown to Defendant, including her name, social security number, phone number, home address, and email address. [Dkt. 16-2, ¶¶ 10-12, 28-30]; *see Aerotek, Inc.*, 624 S.W.3d at 205 ("security procedures may include requiring personal identifying information—such as a social security number or an address—to register for an

account") (citing *Butler v. Z&H Foods, Inc.*, No. 4:19-CV-02759, 2021 WL 630942, at *3 (S.D. Tex. Jan. 29, 2021) (concluding that the plaintiffs' affidavits denying that they electronically signed an arbitration agreement did not raise a fact issue where the defendant introduced their employment files with "completed electronic employment applications containing personal details," "digitally signed [Arbitration] Agreements," and forms "contain[ing] social security numbers, digitally signed on the same day as the Agreements"); *Thick v. Dolgencorp of Tex., Inc.*, No. 4:16-CV-00733, 2017 WL 108297, at *2 (E.D. Tex. Jan. 11, 2017) (same).

Second, Defendant's uncontroverted evidence establishes that it maintains a secure system for tracking user activities. *Aerotek, Inc*., 624 S.W.3d at 206. Indeed, the declaration of Chase Webb demonstrates that for each user that executes the clickwrap agreement, a record is generated referred to as a "Verified Consent." [Dkt. 16-2, ¶ 16]. Verified Consent is an internet lead certification authority that specializes in internet verification of third-party proofs of consent.[1] The application records and timestamps the applicant's every action in completing the clickwrap agreement. [Dkt. 16-2, ¶¶ 16-21, 25-31, Exhibit C]. This record is created through an automated process by the Verified Consent software and cannot be modified by Defendant. [Dkt. 16-2, ¶¶ 18-

[1] Plaintiff's attempt to argue that Webb's declaration is insufficient to authenticate the Verified Consent software and video is also unavailing. Webb's declaration establishes the Verified Consent as business records on which Defendant relies in the normal course of business. [Dkt. 16-2, ¶¶ 16-21]; *see also U.S. v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990) (holding that business records of one company may become business records of a second company without accumulation of inadmissible hearsay and "there is no requirement that the records be created by the business having custody of them"); *Air Land Forwarders, Inc. v. U.S.*, 172 F.3d 1338, 1343 (Fed.Cir.1999) (noting there is no requirement for first-hand knowledge of procedures used in original preparation of third-party documents when documents incorporated into records of another business, records were relied upon, and there were other indicia of reliability). Likewise, Texas courts considering testimony about "clickwrap" online agreements have not required that the affiant demonstrate specialized or technical knowledge of the software design of the online portal used by the company. *Kyani, Inc. v. HD Walz II Enterprises, Inc.,* No. 05-17-00486-CV, 2018 WL 3545072 at *4 (Tex. App.—Dallas 2018, no pet) (abrogated on other grounds); *Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559, 567–68 (Tex. App.—El Paso 2016, pet. denied) (affidavit by compliance programs manager in Sears Law Department who testified she was familiar with electronic system and software company used to manage HR records was sufficient to authenticate screenshot showing receipt and acknowledgment of arbitration agreement). Thus, Webb's declaration, which is based on his personal knowledge of Defendant's regularly conducted business activities and records, is sufficient to authenticate the generated Verified Consent video [Dkt. 16-2, ¶¶ 1, 4, 16-21] and a declaration from Verified Consent is not necessary.

21]. And, absent the user completing the three-step verification process for completing the clickwrap agreement and a Verified Consent being generated, the registration is not completed, the user's information is not stored, and the user is not contacted to complete an application or obtain other financial services from Defendant. [Dkt. 16-2, ¶ 19]; *see Aerotek, Inc.*, 624 S.W.3d at 206 (holding that adequate security procedures include "business rules that require users to complete all steps in a program before moving on or completing it").[2]

In light of this uncontroverted evidence, Defendant has amply satisfied its burden under *Aerotek, Inc.* of demonstrating effective security processes sufficient to attribute the electronic acceptance of the clickwrap agreement to Plaintiff. *Aerotek, Inc.*, 624 S.W.3d at 208-09; TEX. BUS. & COMM. CODE § 322.009.

**C. Plaintiff's self-serving denial is not sufficient to avoid arbitration.**

In contrast to the clear and direct evidence establishing that Plaintiff visited the Website and completed the clickwrap arbitration agreement by entering her confidential personal information, Plaintiff offers only a self-serving denial that she "never acknowledged, agreed, or consented to the Privacy Policy and Terms of Use on Lendvia.com" and "never authorized anyone to do so on [her] behalf." [Dkt. 21-1, ¶ 7].

But the Texas Supreme Court has been clear that where a party seeking to enforce an electronic arbitration agreement connects the opposing party to the agreement via its security

[2] In addition to their role in preventing identity theft, these electronic protections have also become necessary to protect businesses that respond to customer solicitations from specious TCPA claims, which have become something of a cottage industry. Online forums such as http:robocalls.cash offer kits and peer-to-peer training on how to obtain TCPA settlements. Publicly filed screenshots from this forum demonstrate participants advocating the use of Voice Over Internet Protocols and text applications to induce telemarketers into contacting phone numbers listed on the Do Not Call Registry in order to generate TCPA Claims. *See e.g.*, *Hossfield et al. v. Allstate Ins. Co.*, No. 4:24-MC-00142, Dkt. 1-2, Dkt. 8 (E.D. Tex. 2024) (Mazzant, J.). And at least one other court in Texas has expressed grave concerns that the plaintiff solicited the very calls for which he sued under the TCPA. *Guadian v. DEBTBLUE LLC, et al.*, No 3:23-cv-00329, 2024 WL 5185708 at *1 (W.D. Tex. May 7, 2024) (Cardone, J). In this fraught legal landscape, objective documentation of a verified consent through the entry of unique personal identifiers is the most positive and direct evidence of a consumer's voluntary actions.

protocols, the opposing party's self-serving denial of execution does not suffice to raise a fact issue on the formation of the agreement. *Aerotek, Inc*., 624 S.W.3d at 209; *see also Johnson v. Southwest Recovery Services*, Inc., 2023 WL 1944127 at *8, 9, Civil Action No. 3:22-CV-242-X-BH (N.D. Tex. 2023) (finding Plaintiff's self-serving statement, without anything more, was insufficient to put the existence of the arbitration agreement in issue); *see also Butler*, 2021 WL 630942 at *2 (without corroborating evidence, self-serving affidavit was insufficient to create a fact issue).

In this case, Plaintiff does not dispute that the home address contained in the clickwrap agreement is her address, that the phone number provided is her phone number, or that the social security number in the agreement is her social security number. She also does not dispute that the email address provided was a correct email address for her; she merely claims she was not using it at that time because she had forgotten her password. [Dkt. 21-1, ¶ 17]. Furthermore, Plaintiff offers no evidence or explanation as to how her confidential information could have been entered into Defendant's website and documented by the Verified Consent if she did not enter it herself. Plaintiff speculates that a third party may have submitted the forms without her knowledge or involvement, but self-serving conjecture is not enough to overcome Defendant's motion. Further, the suggestion that this hypothetical actor would deliberately provide Plaintiff's correct telephone number (thereby directing all subsequent communications and loan information to Plaintiff) rather than their own strains credulity. There is therefore no basis for a reasonable factfinder to conclude that this information was input by anyone other than Plaintiff herself. *Aerotek, Inc*., 624 S.W.3d at 209 ("Aerotek's evidence of the security procedures for its hiring application and its operation is such that reasonable people could not differ in concluding that the Employees could not have completed their hiring applications without signing the [Mutual Arbitration Agreements]. The Employees' simple denials are no evidence otherwise.").

And although Plaintiff claims not to have used an Android device to access the website [Dkt. 21-1, §§ 12-14], regardless of the device she used, the electronic signature of the clickwrap agreement is attributable to Plaintiff by virtue of the accurate input of confidential information that is unique to her, such as her social security number and home address. *Aerotek, Inc.*, 624 S.W.3d at 205 (requiring personal identifying information—such as a social security number or an address—to register for an account is a security measure attributing a signature to the alleged signatory under Section 322.009 of the Act); *Butler*, 2021 WL 630942, at *3 (concluding that the plaintiffs' affidavits denying that they electronically signed an arbitration agreement did not raise a fact issue where the defendant introduced their employment files with forms "contain[ing] social security numbers, digitally signed on the same day as the Agreements"); *Thick*, 2017 WL 108297, at *2 (E.D. Tex. Jan. 11, 2017) (same). As Plaintiff can offer no explanation for how this information would have otherwise been provided, if not by her, she has failed to offer any objective evidence to raise a disputed issue on the formation of the agreement. *Id.*

  Finally, Plaintiff's reliance on the federal district court cases of *Newell, Collins, Gilliam,* and *Keller* is also misplaced, as none of these cases applied Texas law to the question of contract formation. Furthermore, these cases do not, as Plaintiff claims, stand for the proposition that "federal courts have refused to enforce arbitration based on unauthenticated screen-recorded videos— particularly where, as here, the plaintiff submits sworn evidence disputing that she ever visited the website or agreed to arbitrate." [Dkt. 21, p. 12]. There is no indication that any of these courts questioned the authenticity of the videos submitted by the defendants, which were, in *Keller*, *Collins*, and *Newell*, Verified Consent videos such as the video submitted by Defendant in this

case. And, in none of these cases did the courts deny the defendants' motions compel arbitration based solely upon the plaintiffs' submittal of sworn declarations.[3]

**D. Alternatively, if the Court finds a fact question, it must hold a summary trial on the question of formation.**

Finally, at the very least, Defendant's uncontroverted evidence regarding the input of Plaintiff's confidential information is sufficient to meet Defendant's initial burden of showing the existence of an agreement to arbitrate. *See Lamonaco v. Experian Information Solutions, Inc.*, 141 F.4th 1343, 1348 (11th Cir. 2025) (Declaration that describes the enrollment process and appends the operative contract is competent evidence sufficient to satisfy the movant's burden on a motion to compel arbitration on a clickwrap agreement). In the unlikely event the Court finds that Plaintiff's evidence raises a genuine issue of material fact as to contract formation, the Court should hold a summary trial on that issue alone. 9 U.S.C.A. § 4; *see also Lamonaco*, 141 F.4th at 1347; *Norwood v. Tenet Healthcare Corp.*, No. 5:18-cv-1294-OLG, 2019 WL 13140588 at *3 (W.D. Tex. 2019) ("In cases where a factual dispute exists regarding the formation of an agreement to arbitrate, the FAA provides that the court should proceed to a summary trial proceeding to resolve the factual disputes."). Thus, if the Court does not initially compel arbitration, Defendant requests a trial on the limited issue of formation of the arbitration agreement so that Defendant may establish its right to arbitration.

---

[3] In *Newell* and *Collins*, the courts held the defendants' motions in abeyance pending a trial, finding genuine issues of material fact existed. *See Newell v. LendVia, LLC*, 2025 WL 2380706 at *1 (E.D. Pa. 2025, slip copy); *Collins v. Better Debt Solutions, LLC*, 2025 WL 1420920 at *1, 7 (C.D. Cal. 2025, slip copy). In *Gilliam*, the court considered additional evidence obtained through discovery before denying the defendant's motion. *See Gilliam v. Prince Health Group*, *LLC,* 2025 WL 1126545 at *2, 4 (M.D. Ten. 2025, slip copy). Similarly, the court in *Keller* ordered that the parties conduct limited discovery on the existence of an agreement, following which the defendant could file a new motion to compel arbitration. *See Keller v. LendVia, LLC*, Cause No. 6:25-cv-02982, Dkt. 31 (Dist. Ct. S.C.).

**PRAYER**

For these reasons, as well as those set forth in Defendant's Motion to Compel Arbitration and Stay Proceedings, Defendant respectfully requests that the Court grant its Motion compelling arbitration and stay this action while Plaintiff pursues her claims against Defendant in arbitration, or, in the alternative, if the Court finds a fact issue of formation of the arbitration agreement, that the Court set a summary trial solely on the issue of formation pursuant to Section 4 of the Federal Arbitration Act.

Dated: January 23, 2026.

Respectfully submitted,

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
Two Barton Skyway
1601 S. MoPac Expy., Suite C400
Austin, Texas 78746
(512) 472-8021: Telephone
(512) 320-5638: Facsimile

By: ______________________________
Gunnar P. Seaquist
State Bar No: 24043358
gseaquist@bickerstaff.com
Sara Labashosky
State Bar No: 24129467
slabashosky@bickerstaff.com

***ATTORNEYS FOR DEFENDANT***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been filed and served via CM/ECF electronic filing and/or Certified Mail, Return Receipt Requested, on this 23rd day of January, 2026 to all counsel of record.

Gunnar P. Seaquist

______________________________
Gunnar P. Seaquist